IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 22-1786

A.C., a minor child by his next friend, mother and legal guardian, M.C.,

Plaintiff/Appellee,

v.

METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, and
FRED KUTRUFF, in his official capacity as Principal of John R. Wooden Middle
School,

Defendants/Appellants.

On Appeal from the United States District Court for the
Southern District of Indiana, No. 1:21-cv-2965,
The Honorable Tanya Walton Pratt, Chief Judge

**AMICUS BRIEF OF INDIANA AND 20 OTHER STATES
IN SUPPORT OF APPELLANTS**

THEODORE E. ROKITA
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

*Counsel for* Amici *States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICI* STATES ....................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................. 2

ARGUMENT .................................................................................................... 2

I.    *Whitaker* Does Not Control This Case ................................................. 2

II.    Title IX Permits Separation of Bathrooms—and Requires Equal
Opportunities—Based on Sex, Not Gender Identity ........................... 3

      A.  Title IX permits schools to enforce male and female bathrooms .......... 3

      B.  Interpreting Title IX to protect transgender status undermines
efforts to afford equal opportunities to males and females
regardless of *sex* ................................................................................ 6

III.    The School's Bathroom Policy Does Not Violate the Equal Protection
Clause .................................................................................................... 8

      A.  Transgender individuals are not a suspect or quasi-suspect class
under the Equal Protection Clause ....................................................... 9

      B.  Requiring students to use bathrooms consistent with their biological
sex is not impermissible sex discrimination under the Equal
Protection Clause ............................................................................... 10

CONCLUSION ............................................................................................... 14

ADDITIONAL COUNSEL ............................................................................. 15

CERTIFICATE OF WORD COUNT .............................................................. 16

CERTIFICATE OF SERVICE ........................................................................ 17

# TABLE OF AUTHORITIES

<span style="font-variant:small-caps">Cases</span>

*A.M. v. Indianapolis Pub. Schs.*,
  No. 1:22-cv-1075 (S.D. Ind.) ................................................................ 1, 8

*Ballard v. United States*,
  329 U.S. 187 (1946) .................................................................................. 5

*Baskin v. Bogan*,
  766 F.3d 648 (7th Cir. 2014) .................................................................. 9

*Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomi Cnty. v. Earls*,
  536 U.S. 822 (2002) .................................................................................. 1

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) .............................................................................. 3

*Chaney v. Plainfield Healthcare Ctr.*,
  612 F.3d 908 (7th Cir. 2010) ................................................................ 11

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ............................................................................ 9, 11

*Frontiero v. Richardson*,
  411 U.S. 677 (1973) .................................................................................. 9

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) .............................................................. 4, 12

*Ill. Republican Party v. Pritzker*,
  973 F.3d 760 (7th Cir. 2020) .............................................................. 2, 3

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  3 F.4th 1299 (11th Cir.), *reh'g en banc granted*, 9 F.4th 1369 (11th
  Cir. 2021) ............................................................................................ 4, 5

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................. 2

*Nordlinger v. Hahn*,
  505 U.S. 1 (1992) .................................................................................... 12

*Obergefell v. Hodges*,
  576 U.S. 644 (2015) .................................................................................. 9

CASES [CONT'D]

*Safford Unified Sch. Dist. No. 1 v. Redding*,
    557 U.S. 364 (2009) ......................................................................... 13

*Tennessee v. U.S. Dep't of Educ.*,
    No. 3:21-cv-308 (E.D. Tenn.) .............................................................. 1

*United States v. Virginia*,
    518 U.S. 515 (1996) ..................................................................... 5, 11

*Washington v. Davis*,
    426 U.S. 229 (1976) ........................................................................ 10

*Whitaker v. Kenosha Unified Sch. Dist.*,
    858 F.3d 1034 (7th Cir. 2017) ........................................................ 2, 9

STATUTES

20 U.S.C. § 1681(a) ............................................................................. 4

20 U.S.C. § 1681(a)(2) ......................................................................... 4

20 U.S.C. § 1681(a)(6)(B) ..................................................................... 4

Ind. Code § 20-33-13-1 ......................................................................... 7

OTHER AUTHORITIES

34 C.F.R. § 106.33 ............................................................................... 4

34 C.F.R. § 106.41 ............................................................................... 7

Joan Biskupic, *Ginsburg: Court Needs Another Woman*, USA Today,
    *available at* https://usatoday30.usatoday.com/news/washington/
    judicial/2009-05-05-ruthginsburg_N.htm ........................................... 13

Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*,
    Wash. Post, Apr. 7, 1975 .................................................................. 13

W. Burlette Carter, *Sexism in the "Bathroom Debates"*, 37 Yale L. &
    Pol'y Rev. 227 (2018) ...................................................................... 11

## INTEREST OF *AMICI* STATES

The States of Indiana, Alabama, Alaska, Arizona, Arkansas, Georgia, Idaho, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, and West Virginia respectfully submit this brief in support of Appellants. *Amici* States all have public school and public university systems that receive federal funding under Title IX. In a "public school environment[,] . . . the State is responsible for maintaining discipline, health, and safety." *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomi Cnty. v. Earls*, 536 U.S. 822, 830 (2002). The *amici* States therefore have a strong interest in the efficient operation of their educational institutions and in protecting the health, safety, welfare, and privacy of all students. Many *amici* States are involved in a multistate lawsuit challenging the federal government's guidance interpreting Title IX's prohibition of sex discrimination to mean discrimination on the basis of sexual orientation and gender identity. *See Tennessee v. U.S. Dep't of Educ.*, No. 3:21-cv-308 (E.D. Tenn.). And some States, including Indiana, are defending laws prohibiting biological males from participating in girls' sports. *See, e.g.*, *A.M. v. Indianapolis Pub. Schs.*, No. 1:22-cv-1075 (S.D. Ind.). Requiring schools to allow some students to use the restrooms of the opposite biological sex threatens the privacy (and safety) of all students. No law imposes such a requirement.

The *amici* States respectfully request the Court to reverse the district court's decision and vacate the preliminary injunction.

## SUMMARY OF THE ARGUMENT

Both before and after the enactment of Title IX 50 years ago, schools have divided bathrooms by sex without offending that statute—or the Equal Protection Clause for that matter. Yet the district court in this case enjoined the Metropolitan School District of Martinsville from enforcing its sex-separated restrooms as offensive to both Title IX and the Equal Protection Clause. Contrary to that injunction, Title IX expressly permits sex-segregated restrooms, and this Court and the Supreme Court have concluded, unsurprisingly, that sex-separate facilities withstand scrutiny under the Equal Protection Clause based on the privacy interests at stake. To hold otherwise, the district court erred because it both relied on a case that applied an incorrect standard that has since been abrogated and ignored precedents deeming sex-separate restrooms permissible. This Court should therefore reverse.

## ARGUMENT

### I.    *Whitaker* Does Not Control This Case

No controlling precedent holds that Title IX or the Equal Protection Clause requires schools to permit students to use whatever bathrooms they like. The district court relied on *Whitaker v. Kenosha Unified School District*, 858 F.3d 1034, 1039 (7th Cir. 2017), to hold otherwise, ECF No. 50 at 6–7, but that case relied on an incorrect, ultra-lenient "better than negligible" merits test for preliminary injunctions, *Whitaker*, 858 F.3d at 1046. The Supreme Court has rejected that standard, *Nken v. Holder*, 556 U.S. 418, 434 (2009), and *Whitaker* has since been abrogated. *See Ill. Republican*

2

*Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (recognizing abrogation of *Whitaker* because the Supreme Court "expressly disapproved" the "better than negligible" standard).

Under the proper standard, "a mere possibility of success is not enough." *Id.* Instead, the plaintiff "must make a strong showing that she is likely to succeed on the merits." *Id. Whitaker* never reached final judgment, and the Seventh Circuit's preliminary assessment that "sex" under Title IX has a "better than negligible" chance of meaning gender identity is not sufficient to control here. The question is whether this plaintiff can make a "strong showing" that is what "sex" means in Title IX. A.C. cannot. A final assessment of the permissibility of separating restrooms based on biological sex under Title IX and the Fourteenth Amendment remains an open question for this Court, and the district court erred in relying on *Whitaker* alone.

## II.    Title IX Permits Separation of Bathrooms—and Requires Equal Opportunities—Based on Sex, Not Gender Identity

### A. Title IX permits schools to enforce male and female bathrooms

When the Supreme Court in *Bostock* disclaimed ruling on "bathrooms, locker rooms, or anything else of the kind," *Bostock v. Clayton County*, 140 S. Ct. 1731, 1753 (2020), it was not simply taking care to avoid deciding more than necessary. Bathrooms and locker rooms differ from employment in at least one critical respect: sex-based employment discrimination is prohibited by federal statute, whereas sex-based discrimination in bathrooms and locker rooms is both permitted and expected by federal statute.

Unlike Title VII, Title IX expressly allows sex-based separation in certain settings. Title IX, enacted as part of the Educational Amendments of 1972, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). It also explicitly provides that "nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." *Id.* § 1686. And its enforcing regulations specifically provide that "[a] recipient may provide separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33.

The ordinary meaning of "sex" at the time that Title IX was enacted was biological sex, not gender identity. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1322 (11th Cir.) (Pryor, C.J., dissenting) (collecting dictionary definitions from the time of enactment and onward), *reh'g en banc granted*, 9 F.4th 1369, 1372 (11th Cir. 2021); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632–33 (4th Cir. 2020) (Niemeyer, J., dissenting) (same). And the statutory context of Title IX confirms that its drafters understood sex as a binary concept. *See* 20 U.S.C. § 1681(a)(2) (describing how institution may change "from . . . admit[ting] only students of one sex to . . . admit[ting] students of both sexes"); *id.* § 1681(a)(6)(B) (referring to "Men's" and "Women's" associations and organizations for "Boy[s]" and "Girls," "the membership of which has traditionally been limited to persons of one sex").

"Not long ago, a suit challenging the lawfulness of separating bathrooms on the basis of sex would have been unthinkable." *Adams*, 3 F.4th at 1321 (Pryor, C.J., dissenting). The Supreme Court has held that "[p]hysical differences between men and women . . . are enduring" and that the "'two sexes are not fungible'" but rather have "inherent differences." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (quoting *Ballard v. United States*, 329 U.S. 187, 193 (1946)). An interpretation of Title IX that prohibits separating bathrooms and locker rooms by biological sex would require schools to do away with sex-specific bathrooms and locker rooms entirely, not only for transgender students. Such an interpretation would be contrary to both common sense and the "well-established privacy interests in using the bathroom away from the opposite sex." *Adams*, 3 F.4th at 1321 (Pryor, C.J., dissenting).

The district court seems to misunderstand how its ruling conflicts with Title IX's clear allowance of sex-separated facilities. The court says that "A.C. has not requested that additional facilities be built, or the current ones be redesignated in any way," but instead "is seeking to use those facilities that already exist and align with his gender identity." ECF No. 50 at 11. But requiring gender-identity exceptions from the School District's mandatory separation of restrooms on the basis of sex means that the School District cannot have truly sex-separated restrooms. The bottom line, according to the district court, is that if a school chooses to provide sex-separated facilities, it must enforce that separation on the basis of gender identity rather than biological sex—meaning separate-sex restrooms for some but not *all* boys and girls.

5

Moreover, the district court says that mandatory exceptions to male-female restroom policies are determined by the students *themselves*. The district court asserts that "there was no evidence presented that taking hormones and receiving a gender marker change on one's birth certificate are required prerequisites to identify as a transgender person, much less that either of these factors would automatically authorize A.C. to use the boys' restroom." ECF No. 50 at 11. The implication is that *no* objective standard for identifying transgender persons—apart from self-identification—is permissible.

That approach places schools in an untenable position under Title IX, as it eliminates any possible standard for schools to apply when a biological male seeks entrance to girls' restrooms. Title IX, however, expressly *allows* bathroom and locker room separation based on sex. It is impossible to reconcile that statutory permission with requiring exceptions based on nothing more than individual subjective identification or preference.

**B. Interpreting Title IX to protect transgender status undermines efforts to afford equal opportunities to males and females regardless of *sex***

Interpreting the meaning of "sex" under Title IX is about much more than preventing sex discrimination, whether in bathrooms or elsewhere.  It is also about preserving opportunities for girls and women—the meaning which must be fixed if the statute is to be effective. In other words, Title IX is about prohibiting discrimination on the basis of sex *and* ensuring equal opportunities regardless of sex, where sex

means biological sex and is not subject to constant redefinition over time, much less individualized subjective assessment.

Historically, Title IX has been understood to allow separate athletic programs for biological males and females. Title IX's implementing regulations state that "a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." 34 C.F.R. § 106.41. Permitting sex-separated sports, and requiring equal opportunities for each, marked a monumental shift in women's equality in education, including participation in athletics. Its results for the elevation of women in society are rightly celebrated and well-known.

Recently, efforts to permit biological males who identify as transgender to participate in womens' and girls' sports have challenged the norm of separating biological males and females into different sports teams. Many sports-governing bodies have taken steps to permit some biological males to participate in girls' sports. Such developments threaten to erode sex as the distinguishing characteristic of athletic competition, along with gains made for women under Title IX. In response, some jurisdictions have enacted laws requiring schools to maintain the same understanding of "sex" that prevailed when Congress passed Title IX 50 years ago: biological sex at birth. Indiana recently passed a law prohibiting biological males from competing in girls' sports at the K–12 level. 2022 Legis. Serv. 177-2022 (HEA 1041), codified at Ind. Code § 20-33-13-1 *et seq.* (eff. July 1, 2022). That law is being challenged on both Title IX and equal protection grounds, and the State of Indiana has intervened to

7

defend the statute. *See A.M. v. Indianapolis Pub. Schs.*, No. 1:22-cv-1075 (S.D. Ind.). By protecting women's sports, HEA 1041 ensures Title IX's guarantees of equal opportunities to both sexes. Notably, the district court rejected the idea of imposing objective standards on claims of transgender status. The implications of such an interpretation of Title IX—where biological males may subjectively declare themselves to be transgender females—for women's sports opportunities are staggering.

This Court should not lose sight of that important Title IX objective as it considers how to handle demands for bathroom access. The meaning of sex under Title IX presumably does not vary with context. If "sex" under Title IX means gender identity, and if gender identity is merely a matter of self-identification, then States will be unable to preserve athletic opportunities for females, and indeed will not even be able to impose standards for transgender participation in interscholastic athletics. An interpretation consistent with the statutory text and structure of Title IX that "sex" means biological sex at birth avoids this problem.

## III. The School's Bathroom Policy Does Not Violate the Equal Protection Clause

Although the level of scrutiny to apply was not in dispute below, ECF No. 50 at 9, rational-basis review applies to the equal-protection claim because transgender individuals are not a suspect or quasi-suspect class. Even under heightened scrutiny, requiring transgender individuals to use restrooms in accordance with biological sex is not impermissible sex discrimination under the Equal Protection Clause.

## A. Transgender individuals are not a suspect or quasi-suspect class under the Equal Protection Clause

The district court performed no analysis regarding the proper level of scrutiny for the equal-protection claim, noting only that the "School District agrees that its classification is subject to intermediate scrutiny." ECF No. 50 at 9. Heightened scrutiny, however, should not apply.

The Supreme Court has been reluctant to recognize new suspect and quasi-suspect classes. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441–42 (1985) (declining to recognize mental disability as a quasi-suspect class and explaining the courts "have been very reluctant" to designate new such classes). The last time the Seventh Circuit recognized a new quasi-suspect class was in *Baskin v. Bogan*, which held that homosexuals were a quasi-suspect class under the Equal Protection Clause. 766 F.3d 648, 654 (7th Cir. 2014). But that analysis was not borne out by the Supreme Court, which, rather than designating homosexuals a quasi-suspect class, instead recognized same-sex marriage as a fundamental right. *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015). Even *Whitaker* did not go so far as to recognize transgender status as a protected class. *Whitaker v. Kenosha Unified Sch. Dist.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("[T]his case does not require us to reach the question of whether transgender status is per se entitled to heightened scrutiny.").

More fundamentally, any claim of protected status for transgender individuals runs headlong into the Supreme Court's longstanding view that "sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). It is the very immutability

9

of sex that keeps it protected from discrimination via heightened scrutiny (in some contexts). If the plaintiff is claiming protected status because transgender people have historically been subjected to bathroom and locker room discrimination, the plaintiff is at war with the status of sex—which is precisely what defines bathroom and locker room segregation—as an immutable characteristic.

Perhaps the plaintiff instead means only to say that transgender people have historically been subjected to discrimination in a variety of contexts, but not specifically in the segregation of bathrooms and locker rooms. If so, that admission means that the school's policies do not target transgender persons as such (because they target sex rather than gender identity) and merely have a disparate negative impact on transgender people. But if so, the status of transgender people as a class under the Equal Protection Clause is irrelevant, for the plaintiff's claim must fail for a different reason—because the Equal Protection Clause protects only against intentional discrimination, not disparate impact. *See Washington v. Davis*, 426 U.S. 229, 238–39 (1976).

Either way, the school district is not required to justify its ordinary, common-sense sex-segregated bathrooms under a heightened-scrutiny standard.

### B. Requiring students to use bathrooms consistent with their biological sex is not impermissible sex discrimination under the Equal Protection Clause

Regardless, the Supreme Court has long recognized that, because "[p]hysical differences between men and women . . . are enduring," "[t]he heightened review standard our precedent establishes does not make sex a proscribed classification."

*United States v. Virginia*, 518 U.S. 515, 533 (1996). Sometimes, differential treatment based on sex is justified, even laudable. As Justice Thurgood Marshall once observed, "[a] sign that says 'men only' looks very different on a bathroom door than a courthouse door." *City of Cleburne*, 473 U.S. at 468–69 (Marshall, J., concurring in judgment in part and dissenting in part).

Indeed, in the Supreme Court's landmark equal-protection decision requiring Virginia Military Institute to admit women, the Court, in an opinion written by Justice Ginsburg, recognized that "[a]dmitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements." *Virginia*, 518 U.S. at 550 n.19. And this Court has expressly recognized that "the law tolerates same-sex restrooms . . . to accommodate privacy needs." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010); *see also* W. Burlette Carter, *Sexism in the "Bathroom Debates"*, 37 Yale L. & Pol'y Rev. 227, 287–88 (2018) ("Sex-separation [in bathrooms] dates back as far as written history will take us.").

Perhaps for this reason, the plaintiff does not purport to challenge the school's ability to provide separate bathroom and locker room facilities to male and female students. *See* ECF No. 50 at 11 ("A.C. has not requested that additional facilities be built, or the current ones be redesignated in any way."). Instead, the plaintiff challenges only the school's decision to not allow biological females who identify as males to use the restrooms designated for biological male students. But the plaintiff is "not,

in fact, similarly situated to the biologically male students who use[] those restrooms"; critically, the plaintiff "remains anatomically different from males." *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). Put another way, "[b]ecause such anatomical differences are at the root of why communal restrooms are generally separated on the basis of sex," the school's policy is not really sex discrimination at all. *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting).

At bottom, the claim is that A.C. should be allowed to use the restrooms consistent with A.C.'s gender identity, regardless of anatomy and biology, because anatomy and biology carry no meaningful differences. But this argument is, in fact, a challenge to sex-segregated bathrooms and locker rooms. If anatomy and biology are unimportant, what grounds exist for sex-segregated bathrooms and locker rooms in the first place?

Alternatively, one could view the same point as a matter of the school's compelling interest in protecting the privacy of all students. The court acknowledged the school district's argument that its restroom policy is substantially related to its important objective of protecting privacy interests of students. ECF No. 50 at 9–10. It did not conclude that this privacy interest is unimportant, but instead simply stated that "Whitaker remains good law and thus is binding on this court." *Id.* at 11.

12

In fact, protecting student privacy is an important government objective. The mere presence of a member of the opposite sex in a restroom or locker room is a violation of privacy, regardless whether any incident occurs. And when it comes to being undressed, the Supreme Court itself has recognized that "adolescent vulnerability intensifies the patent intrusiveness of the exposure." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 375 (2009). As Justice Ginsburg observed, this vulnerability is especially heightened when teenage girls are involved: "[A] girl who's just the age where she is developing, whether she has developed a lot . . . or . . . has not developed at all (might be) embarrassed about that." Joan Biskupic, *Ginsburg: Court Needs Another Woman*, USA Today, *available at* https://usatoday30.usatoday.com/news/washington/judicial/2009-05-05-ruthginsburg_N.htm. And of course, the school could not allow transgender males to use the boys' bathroom while prohibiting transgender females from doing the same. Thus, "[s]eparate places to disrobe, sleep, [and] perform personal bodily functions are permitted, in some situations required, by regard for individual privacy." Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post, Apr. 7, 1975, at A21.

This point is demonstrated by the obvious implications of a change in school policy: The school could not simply allow *one* student to use the opposite-sex bathrooms without allowing *other* students to do the same. This enforcement problem would lead to privacy (and potentially safety) concerns for all students wishing to use restrooms and locker rooms away from the prying eyes of a member of the opposite sex.

For these reasons, the school's policy of requiring students to use restrooms consistent with their biological sex is substantially related to the school's important interest in protecting student privacy and therefore, does not violate the Equal Protection Clause.

## CONCLUSION

The Court should reverse the district court's decision and vacate the preliminary injunction.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

*s/Thomas M. Fisher*
THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

## ADDITIONAL COUNSEL

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

MARK BRNOVICH
Attorney General
State of Arizona

LESLIE RUTLEDGE
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

LAWRENCE WASDEN
Attorney General
State of Idaho

DEREK SCHMIDT
Attorney General
State of Kansas

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ERIC SCHMITT
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

DOUG PETERSON
Attorney General
State of Nebraska

JOHN M. O'CONNOR
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

JASON R. RAVNSBORG
Attorney General
State of South Dakota

HERBERT H. SLATERY III
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

SEAN REYES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF WORD COUNT

I verify that this brief, including footnotes and issues presented, but excluding

certificates, contains 3,385 words according to the word-count function of Microsoft

Word, the word-processing program used to prepare this brief.

By: *s/ Thomas M. Fisher*
   Thomas M. Fisher
   Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Thomas M. Fisher*
Thomas M. Fisher
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov