Nos. 22-1786, 22-2318

_____

United States Court of Appeals for the Seventh Circuit

_____

| | |
|---|---|
| B.E. and S.E., minor Children by their Mother, legal guardian, and next friend, L.E., | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division |
| Plaintiffs-Appellees, | |
| v. | Case No. 2:21-cv-00415-JRS-MG |
| VIGO COUNTY SCHOOL CORPORATION; PRINCIPAL, TERRE HAUTE NORTH HIGH SCHOOL, in his official capacity, | Honorable James R. Sweeney II, Judge. |
| Defendants-Appellants. | Appeal No. 22-2318 |
| | |
| A.C., a minor child by his next friend, mother and legal guardian, M.C., | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division |
| Plaintiff-Appellee, | |
| v. | Case No. 1:21-cv-2965-TWP-MPB |
| METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, and PRINCIPAL, JOHN R. WOODEN MIDDLE SCHOOL, in his official capacity, | Honorable Tanya Walton Pratt, Chief Judge. |
| Defendants-Appellants. | Appeal No. 22-1786 |

_____

## APPELLANTS' CONSOLIDATED REPLY BRIEF
_____

Philip R. Zimmerly
  – COUNSEL OF RECORD
Jonathan L. Mayes
Mark A. Wohlford

BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000
*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

ARGUMENT ...................................................................................................... 1

    I.  Section 1686 Should Be at the Crux of the Analysis. ...................................... 1

    II.  *Whitaker* and the District Court's Opinions Overlook Section 1686.............. 2

    III. Plaintiffs' Position Renders Section 1686 a Nullity........................................ 5

    IV. The Equal Protection Clause Does Not Prohibit Sex Separated
        Restrooms and Locker Rooms.......................................................................... 7

    V.  The School Districts Acted in Accordance with Section 1686
        and the Equal Protection Clause....................................................................... 9

CONCLUSION................................................................................................... 9

CERTIFICATE OF COMPLIANCE........................................................... 10

CERTIFICATE OF SERVICE...................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Adams v. Sch. Bd. of St. Johns Cnty.*,
  968 F.3d 1286 (11th Cir. 2020), *vacated and superseded by*
  F.4th 1299 (11th Cir. 2021), *vacated and en banc rehearing granted*,
  9 F.4th 1369 (Aug. 23, 2021). ................................................................ 6, 7

*Bostock v. Clayton Cnty., Ga.*,
  140 S. Ct. 1731 (2020) ............................................................................ 4-5

*Chaney v. Plainfield Healthcare Ctr.*,
  612 F.3d 908 (7th Cir. 2010) .................................................................. 7-8

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984)................................................................................. 2-3

*Doe 2 v. Shanahan*,
  917 F.3d 694 (D.C. Cir. 2019) ................................................................... 7

*Etsitty v. Utah Transit Auth.*,
  502 F.3d 1215 (10th Cir. 2007) ................................................................. 4

*Franklin v. Gwinnett County Public School*,
  503 U.S. 60 (1992)...................................................................................... 3

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019). .................................................................... 9

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020),
  *cert. denied*, 141 S. Ct. 2878 (2021) .......................................................... 5

*Ill. Republican Party v. Pritzker*,
  973 F.3d 760 (7th Cir. 2020) ..................................................................... 9

*Mary M. v. N. Lawrence Cmty. Sch. Corp.*,
  131 F.3d 1220 (7th Cir. 1997) ................................................................... 4

*SAS Inst. Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) ............................................................................... 7

*Smith v. Metro. Sch. Dist. Perry Twp.*,
  128 F.3d 1014 (7th Cir. 1997) ................................................................. 3-4

*United States v. Virginia,*
    518 U.S. 515 (1996) ............................................................ 7, 8

*West v. Radtke,*
    48 F.4th 836 (7th Cir. 2022) ............................................. 6-7

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.,*
    858 F.3d 1034 (7th Cir. 2017) .................................... *passim*

*Wisconsin Pub. Serv. Corp. v. FERC,*
    32 F.3d 1165 (7th Cir. 1994). ............................................. 2

## Constitutional Provisions / Statutes

U.S. Const. amend XIV, § 1 ..................................... *passim*

20 U.S.C. § 1681 ............................................................ 1, 3-5

20 U.S.C. § 1686 .................................................... *passim*

42 U.S.C. § 2000e-2 ("Title VII") ................................. 3-4

## Regulations / Rules

34 C.F.R. § 106.32 ................................................................ 7

34 C.F.R. § 106.33 .................................................. *passim*

34 C.F.R. § 106.34 ................................................................ 7

34 C.F.R. § 106.37 ................................................................ 7

## Other Authorities

118 Cong. Rec. 5,807 (1972) ................................................ 2

*Implementing Title IX: The New Regulations,*
    124 U. Pa. L. Rev. 806, 810 (1976) ................................. 5

Jonathan H. Adler, *Auer Evasions,*
    16 Geo. J.L. & Pub. Pol'y 1, 20–21 (2018) ................... 5-6

Ryan T. Anderson, *A Brave New World of Transgender Policy,* 41 Harv. J.L. & Pub.
    Pol'y 309, 347 (2018) ....................................................... 1-2

## ARGUMENT

Under Title IX, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681 ("Section 1681"). But Title IX does not end there. It further states that educational institutions may "maintain[] separate living facilities for the different sexes." 20 U.S.C. § 1686 ("Section 1686"). And Title IX's implementing regulations confirm that institutions "may provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex." 34 C.F.R. § 106.33 ("Regulation 106.33"). Based upon that statutory language, the implementing regulations, and longstanding past practice, the School Districts have maintained separate toilet, locker room, and shower facilities on the basis of sex. Their position conforms with the plain statutory text and is lawful. Accordingly, the preliminary injunctions entered below, which fail to acknowledge or apply Section 1686, should be reversed.

## I.     Section 1686 Should Be at the Crux of the Analysis.

Since its enactment half a century ago, Section 1686 has received little attention from the courts. Indeed, this Court has never cited Section 1686, let alone addressed its interpretive mandate. Yet, at the time of its enactment, Section 1686 served an obvious yet important purpose: "During the debate on Title IX, there was concern that its enactment would mean the end of sex-specific educational programs

and sex-specific intimate facilities like bathrooms, locker rooms, and showers. Because of this concern, Congress explicitly constructed Title IX to ensure that access to living facilities could take biology into account[.]" *See* Ryan T. Anderson, *A Brave New World of Transgender Policy*, 41 Harv. J.L. & Pub. Pol'y 309, 347 (2018). Thus, Section 1686's exemption was intended to "permit differential treatment by sex . . . in sports facilities or other instances where personal privacy must be preserved." 118 Cong. Rec. 5,807 (1972) (statement of Sen. Birch Bayh).

## II.     *Whitaker* and the District Court's Opinions Overlook Section 1686.

The Plaintiffs and the District Courts rest their entire analysis on *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017). Yet, *Whitaker* does not reference Section 1686 and its interpretive directive. Moreover, in citing to Regulation 106.33, *Whitaker* omits mention of the five key words ("on the basis of sex") from its description of that regulation.

*Whitaker*'s failure to acknowledge and apply Section 1686's carve-out allowing educational institutions to "maintain separate living facilities for the different sexes"—along with its failure to acknowledge that Regulation 106.33 allows the provision of separate facilities "on the basis of sex"—underscores a critical flaw in its analysis. In a case of statutory interpretation, the Court "must give primary effect to the plainly expressed intent of Congress." *Wisconsin Pub. Serv. Corp. v. FERC*, 32 F.3d 1165, 1168 (7th Cir. 1994). "If the intent of Congress is

clear, that is the end of the matter[.]" *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).[1]

In overlooking Section 1686, and instead shunting the sex-stereotyping framework from Title VII onto Title IX in the restroom context, *Whitaker* failed to acknowledge Congress's express directive that maintaining separate living facilities for the different sexes is not unlawful discrimination under Title IX.

Likewise, in omitting mention of the phrase "on the basis of sex" from its description of Regulation 106.33, *Whitaker* snipped the very basis upon which toilet, locker room, and shower facilities may be separated. In other words, while the implementing regulation offers safe harbor to "provide separate toilet, locker room, and shower facilities *on the basis of sex*," 34 C.F.R. § 106.33, *Whitaker* prohibited school districts from doing just that.

It is true that courts on occasion use Title VII precedent in the Title IX context, but that is limited to Section 1681 cases. In the seminal case inviting these comparisons, *Franklin v. Gwinnett County Public School*, the United States Supreme Court recognized that Section 1681 was the provision at question and did not address Section 1686. 503 U.S. 60, 63 n.1 (1992). Similarly, in *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1023-26 (7th Cir. 1997), this Court analyzed

---

[1] Even if a statute is silent or ambiguous with respect to a specific issue, the Court would still default to the implementing agency's regulatory interpretation if it is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

the overlap between these two statutes—Section 1681 and Title VII. But even the correlation between Section 1681 and Title VII is not always certain. *See Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1227 (7th Cir. 1997) (collecting cases where Title VII was not applied in Title IX). Most importantly, *Whitaker* mistakenly assumes that Section 1681 governs, when a more specific provision of Title IX relating to facilities controls the general Section 1681 anti-discrimination provision, and further errs in concluding that Title VII offers guidance on facility-related questions governed by Section 1686.

The Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), underscores the disconnect in relying upon Title VII to interpret Section 1686 in relation to living facilities. *Bostock* proclaimed: "Title VII's message is 'simple but momentous': An individual employee's sex is '*not* relevant to the selection, evaluation, or compensation of employee.'" *Id.* at 1741 (emphasis supplied). Title IX's message is equally simple: Sex is not relevant to participating in educational programs or activities that receive Federal financial assistance, but sex *is* relevant to separate living facilities for the different sexes. Recognizing such distinctions exist in federal statutes other than Title VII, *Bostock* declined to extend its ruling to "sex-segregated bathrooms, locker rooms, and dress codes." *Id.* at 1753.[2] In other words, while *Bostock* may be beneficial to understand claims under Section

---

[2] Thus, *Bostock* did not overrule those portions of decisions such as *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224-25 (10th Cir. 2007), which found that Title VII does not require "employers to allow biological males to use women's restrooms."

1681, it offers nothing when analyzing claims under Section 1686, which is what governs here.

### III.    Plaintiffs' Position Renders Section 1686 a Nullity.

Hoping to keep Section 1686 off the Court's radar, Plaintiffs limit their discussion of Section 1686 to two paragraphs, arguing that "[r]estrooms are not 'living facilities,'" and that "even if they were, that statutory provision, like the restroom regulation, 'is a broad statement that sex-separated living facilities are not unlawful—not that schools may act in an arbitrary and discriminatory manner when dividing students into those sex-separated facilities.'" (Appellees' Br. 41 (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 n.16 (4th Cir. 2020).) To the Plaintiffs, "[t]he point is that if a transgender boy were a cisgender boy, he could use the boys' restrooms and locker rooms. But the transgender boy is denied access solely because he is transgender." (*Id.* at 41-42.)

If accepted, Plaintiffs' position is the death knell for sex-separated restrooms in schools. If restrooms, locker rooms, and showers are not "living facilities", then there is no statutory basis under Title IX for separation of such facilities. Yet, as noted, that was the very reason Congress included Section 1686. Since Title IX's enactment, living facilities have consistently been understood to include restrooms and locker rooms. *Implementing Title IX: The New Regulations*, 124 U. Pa. L. Rev. 806, 810 (1976) ("The term 'living facilities' may include restrooms, lockers, and other school areas where disrobing takes place . . . ."); Jonathan H. Adler, *Auer Evasions*, 16 Geo. J.L. & Pub. Pol'y 1, 20–21 (2018) ("Title IX expressly allows for

the maintenance of single-sex living facilities, such as dormitories, bathrooms, and the like.").

Likewise, if a school district's decision to maintain sex-separated spaces based upon sex has suddenly become "arbitrary and discriminatory," then a school district can no longer maintain sex-separated spaces. Indeed, if a biological boy who identifies as female has a right under Title IX to access the girls' restrooms *on the basis of gender identity*, then it would also be discrimination *on the basis of gender identity* to bar a boy who identifies as male from accessing the girls' restrooms. This logic "would require all schoolchildren to use sex-neutral bathrooms." *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1311 (11th Cir. 2020) (Pryor, J., dissenting), *vacated and superseded by* 3 F.4th 1299 (11th Cir. 2021), *vacated and en banc rehearing granted*, 9 F.4th 1369 (Aug. 23, 2021).

Plaintiffs also argue that the School Districts have failed to present evidence that student privacy has been compromised by their presence in the boys' restrooms and locker rooms. But Section 1686 does not require proof of a privacy violation before schools may act in compliance with it. Instead, schools may lawfully "maintain[] separate living facilities for the different sexes." 20 U.S.C. § 1686. Plaintiffs' effort to graft such an evidentiary burden onto the statute is unfounded and contrary to Congress's public policy decision and its interpretive mandate.[3]

---

[3] Plaintiffs also suggest that concerns about exposure to anatomical differences are not advanced by separate facilities because, with hormone treatment, transgender students will experience "physiological changes" associated with their identified gender. (Appellees' Br 33-34.) This argument ignores precedent and the evidence. "Physical differences between men and women . . . are enduring." *West v. Radtke*,

Ultimately, whether Title IX should be amended to require that gender identity dictate access to living facilities and sports teams, and whether the privacy concerns underlying Congress's enactment of Section 1686 could be better met with partitions or stalls rather than sex-separated facilities, are public policy decisions for elected officials. Judicially reinterpreting Title IX to mandate access to living facilities based upon gender identity would have far-reaching implications for the entire statutory and regulatory framework set forth in Title IX. *See, e.g.*, 34 C.F.R. §§ 106.32, 106.33, 106.34, 106.37. Such a change is appropriately left to elected members of Congress. *See SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) ("It is Congress's job to enact policy and it is this Court's job to follow the policy Congress has prescribed.").

## IV. The Equal Protection Clause Does Not Prohibit Sex Separated Restrooms and Locker Rooms.

Plaintiffs fail to rebut the analysis as to the Equal Protection Clause. "There is no constitutional right for . . . biological males who identify as female to live, sleep, shower, and train with biological females." *Doe 2 v. Shanahan*, 917 F.3d 694, 707–08 (D.C. Cir. 2019) (Williams, J., concurring). Indeed, "the government may promote its interest in protecting privacy by maintaining separate bathrooms for boys and girls, men and women." *Adams v. Sch. Bd. of St. Johns Cnty.*, 3 F.4th 1299, 1308 (11th Cir. 2021), *vacated and en banc rehearing granted*, 9 F.4th 1369 (Aug. 23, 2021). "[T]he law tolerates same-sex restrooms or same-sex dressing

---

48 F.4th 836, 852 (7th Cir. 2022) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). It is undisputed that Plaintiffs' sex and physical anatomy are female.

rooms . . . to accommodate privacy needs." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010).

A school district's decision to separate bathrooms by sex satisfies the equal protection analysis, as it: (1) protects the interests of students in using the restroom away from the opposite sex and in shielding their bodies from exposure to the opposite sex, and (2) is substantially related to the achievement of those privacy objectives, as students use the bathroom, locker room, and shower in a separate space from the opposite sex and are protected against exposure of their bodies to the opposite sex. "[T]he Supreme Court has long required that courts defer to the judgment of public-school officials in this context." *Adams*, 3 F.4th at 1328 (Pryor, J., dissenting).

If this approach does not satisfy constitutional scrutiny and privacy interests are insufficient to maintain separate facilities, then Section 1686 and other federal provisions are unconstitutional, *see, e.g.*, 10 U.S.C. § 7419 (requiring Secretary of Army to "provide for housing male recruits and female recruits separately and securely from each other during basic training," including separate latrine areas); no justification exists for separating bathrooms by sex, *Adams*, 3 F.4th at 1327 (Pryor, J., dissenting); and Supreme Court precedent must be overruled. *United States v. Virginia*, 518 U.S. 515, 550 n.19 (1996) ("Admitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements . . . .").

V.      **The School Districts Acted in Accordance with Section 1686 and the Equal Protection Clause.**

Ultimately, in order to justify the entry of a preliminary injunction, a plaintiff "must make a strong showing that she [or he] is likely to succeed on the merits," not merely a possibility of success or the "better than negligible" chance standard applied in *Whitaker. See Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Here, when Section 1686 and the Equal Protection Clause are appropriately applied, Plaintiffs have not shown that the School Districts acted unlawfully in maintaining sex-separated restrooms, locker rooms, and showers. As a result, because Plaintiffs cannot satisfy this threshold burden, the preliminary injunction should be vacated. *See GEFT Outdoors, LLC v City of Westfield*, 922 F.3d 357, 367-68 (7th Cir. 2019) ("[S]ince GEFT has no likelihood of success on the merits of this claim, there was no need for the district court to conduct further analysis of the 'threshold phase' for preliminary injunctive relief, or to move to the 'balancing phase.'").

## CONCLUSION

The School Districts have complied with Title IX and the Constitution. Accordingly, they respectfully renew their request that this Court reverse the preliminary injunction orders and for all other appropriate relief.

Respectfully submitted,

/s/ *Philip R. Zimmerly*

Philip R. Zimmerly (#30217-06)
 – COUNSEL OF RECORD
Jonathan L. Mayes (#25690-49)
Mark A. Wohlford (#31568-03)

Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000   Fax: 317-684-5173
pzimmerly@boselaw.com
jmayes@boselaw.com
mark.wohlford@boselaw.com

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief conforms to Fed. R. App. P. 32 and Circuit Rule 32.

1.      This brief complies with the type-volume limitations set forth in Circuit Rule 32(c) because it contains 2,368 words based on the "Word Count" feature of Microsoft Word.

2.      This brief complies with the typeface and type style requirements set forth in Circuit Rule 32 because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 12-point Century font.

Dated: November 2, 2022


*Philip R. Zimmerly*
Philip R. Zimmerly

## CERTIFICATE OF SERVICE

I, Philip R. Zimmerly, an attorney, hereby certify that on November 2, 2022, I caused the foregoing Consolidated Reply Brief of Defendants-Appellants to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Pursuant to Circuit Rule 31(b), and upon notice of this Court's acceptance of the electronic brief for filing, I certify that I will cause 15 copies of the Reply Brief of Defendants-Appellants to be transmitted to the Court within 7 days of that notice date.

*Philip R. Zimmerly*
Philip R. Zimmerly
BOSE MCKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204

*Counsel for Defendants-Appellants*